IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | CRIMINAL NO. 1:23-CR-268 |
| : | |
| v.  : | (Judge Conner) |
| : | |
| **CHARLES NELSON LENHART**, : | |
| : | |
| **Defendant** : | |

### MEMORANDUM

Defendant Charles Nelson Lenhart moves the court to suppress evidence obtained during a search of his property. He also requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). We will deny the motion.

### I.  Factual Background[1]

On June 1, 2023, police searched 4735 East Prospect Avenue in Wrightsville, Pennsylvania, a property comprised of a split-level home and a detached garage at the rear. (See Doc. 36 ¶ 4; see also Doc. 36-1 at 3-4). The garage is also referred to as "the clubhouse" due to its affiliation with the Infamous Ryders Motorcycle Club. (See, e.g., Doc. 36-1 at 3-4).

The search was based on a warrant signed by York County Magisterial District Judge Lindy L. Sweeney on May 31, 2023, which sought, *inter alia*, controlled substances, drug packing materials, business records, firearms, and

---

[1] The following factual narrative derives from the affidavit of probable cause and related exhibits attached to Lenhart's motion, (see Doc. 36), along with testimonial evidence adduced at the Franks hearing that occurred before the undersigned on October 10, 2024. Citations to the rough hearing transcript are abbreviated as "10/10/24 Tr. __." Pagination of the rough transcript may vary from pagination of the official transcript. This recitation of facts reflects the court's credibility terminations.

ammunition. (See Doc. 36-1). The warrant covered the home and the garage, "including all out building [*sic*] and curtilage." (See id. at 2). Lower Windsor Township Police Officer Sean Lake provided the affidavit of probable cause. (See id. at 3-4). Officer Lake and other officers executed the warrant and seized, among other items, fentanyl, cocaine, firearms, ammunition, other weapons, and "club records." (See id. at 5-6). Officers then obtained three subsequent warrants based on those materials: two for the account information and transaction history for two Cash App usernames affiliated with Lenhart—"$klutchLIDI" and "$YORK9s," (see Docs. 36-2, 36-3)—and a third for surveillance footage from Night Hawk DVR, which was thought to contain recordings of illegal narcotics transactions implicating Lenhart, (see Doc. 36-4). The foregoing materials formed the basis of the instant charges.

The affidavit of probable cause for the 4735 East Prospect warrant was based in significant part on information Officer Lake obtained during a traffic stop he executed with Officer James Miller. (See Doc. 36-1 at 3-4).[2] On May 31, 2023, Officer Lake stopped a sedan for having an expired registration; inside the vehicle were the driver, a front seat passenger, and a back seat passenger named Celeste. (See 5/31/23 Lake BWC Rec. 00:30-1:10). Officer Lake smelled marijuana around the car when he approached, so he spoke privately with the driver, who informed

---

[2] The parties stipulated to and the court admitted as evidence body-worn camera ("BWC") footage of the stop from Officer Lake and Officer Miller. The footage from Officer Miller is shorter because he arrived on-scene later. For simplicity, citations here are to Officer Lake's footage unless the material is only available in Officer Miller's footage.

2

Officer Lake that Celeste had a medical card and maybe had some weed on her. (See id. at 16:00-16:58). The officers then spoke privately with Celeste. (See id. at 17:23). Officer Lake searched Celeste's backpack with her consent and found a dollar bill containing a small amount of cocaine powder wrapped inside it. (See id. at 17:59-18:20 (consent); id. at 20:02-20:18 (cocaine)). He promised Celeste several times that he would not charge her for possession if she told him where she got the coke. (See id. at 20:32-21:12; 22:02-22:20; 29:45-29:55).

    Celeste recounted the following story after being Mirandized. (See id. at 21:05-21:30). She had dated a member of the Infamous Ryders and frequently purchased drugs at 4735 East Prospect three years prior to the stop but had been clean for the previous eighteen months. (See 5/31/23 Miller BWC Rec. 15:35-15:45; 17:00-17:40). However, on May 31, Celeste texted Lenhart—who she knew by the nickname "Clutch"—and arranged to buy $40 worth of cocaine. (See 5/31/23 Lake BWC Rec. 24:35-25:15 (pseudonym); id. at 28:36-29:22 (text messages)). She then purchased the cocaine from Lenhart in the clubhouse, where she saw large quantities of drugs along with packing materials and guns. (See id. at 22:21-22:40 (drugs); id. at 28:25-28:35 (drugs); see also id. at 30:09-30:35 (guns)). Celeste claimed to "know a lot about" 4735 East Prospect. (See id. at 28:14-28:18). She stated Lenhart kept his stock of cocaine in a bedroom dresser within the upstairs apartment because "that's where it always is." (See id. at 28:26-28:35). She further claimed that the property was "known for cocaine [be]cause they go to Baltimore, pick it up, and bring it here." (See 5/31/23 Miller BWC Rec. 16:50-16:59). Celeste

3

later clarified that this knowledge was historical. She told Officer Miller that she was not in the house on May 31 and that she had last purchased drugs on the property eighteen months prior, though Officer Lake denies overhearing this caveat because he was busy writing down Celeste's contact information at the time. (See id. at 17:00-17:40, 18:15-18:25; 5/31/23 Lake BWC Rec. 28:25-28:35; see also 10/10/24 Tr. 22:2-23:23).

## II. Procedural History

On October 11, 2023, a federal grand jury returned a three-count indictment charging Lenhart with possession with intent to distribute cocaine and fentanyl, 21 U.S.C. § 841(a) (Count 1); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Count 2); and unlawful possession of a firearm by a convicted felon, id. § 922(g)(1) (Count 3). (See Doc. 1). Two more charges were added by superseding indictment on July 17, 2024: retaliating against a witness, 18 U.S.C. § 1513(b)(2) (Count 4); and conspiracy to retaliate against a witness, id. § 1513(b)(2), (f) (Count 5). (See Doc. 32). Lenhart pleaded not guilty and moved, through counsel, to suppress evidence under the Fourth Amendment. The court held a hearing on the motion on October 10, 2024, at which Officers Lake and Miller testified. The motion is fully briefed and ripe for disposition.

## III. Discussion

Lenhart contends that the warrant for 4735 East Prospect is invalid under Franks due to alleged misrepresentations in portions of the supporting affidavit, and that we should suppress the resultant evidence. (See Doc. 37 at 7-11; see also Doc. 44 at 6-7). The government counters that there is no Franks violation, and that

4

the good-faith exception obviates application of the exclusionary rule in any event. We will address each issue *seriatim*.

### A. Lenhart Has Not Demonstrated a Franks Violation.

A criminal defendant may challenge the truthfulness of factual statements in an affidavit of probable cause through what is commonly referred to as a Franks hearing. See generally Franks, 438 U.S. 154. To succeed at the hearing, the defendant must show by a preponderance of the evidence both that (1) the affiant made statements or omissions "knowingly and intentionally, or with reckless disregard for the truth," and (2) that, without those statements, the affidavit's remaining contents do not demonstrate probable cause. See id. at 155-56. We begin with the second prong.

### 1. *The Agreed-Upon Facts in the Affidavit Demonstrate Probable Cause.*

A defendant asserting a Franks violation must prove that the alleged falsehoods are material to the probable cause determination. See id. We assess materiality by removing the alleged misstatements and inserting the omitted information before determining whether the "corrected" affidavit would establish probable cause. United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006). Probable cause exists where the totality of circumstances raises "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Lenhart complains of five issues with the affidavit: (1) omitting that the information regarding the house was eighteen months old and, therefore, stale;

5

(2) omitting when Celeste and Clutch exchanged the text messages Celeste showed Officer Lake (and thus, presumably, that the messages are also stale); (3) omitting that Celeste provided information in exchange for leniency; (4) intimating that Celeste used the phrase "road name" when she actually used the phrase "club name," (see 5/31/23 Lake BWC Rec. 24:38-24:43); and (5) stating that Lenhart returned the cocaine to the home after selling to Celeste in the detached garage, (see Doc. 37 at 7-11; see also Doc. 44 at 6-7). Adopting Lenhart's alterations results in the following "corrected" affidavit:

- Officer Lake had extensive experience in law- and narcotics-enforcement, including over 320 hours of narcotics-specific training;

- On Wednesday, May 31, 2023, Officer Lake was patrolling and observed a vehicle in the driveway of 4735 East Prospect;

- When the same vehicle passed Officer Lake nearby, he performed a traffic stop for expired registration;

- Officer Lake smelled marijuana around the stopped vehicle, which the driver said might be from the back seat passenger, Celeste;

- Officer Lake spoke with Celeste and obtained her consent to search her purse, where he found a small amount of powder, which Celeste believed to be cocaine;

- Officer Lake repeatedly promised not to arrest or charge Celeste for possession if she told him where she got the drugs;

- Celeste, who had recently completed an eighteen-month sentence of probation in connection with a drug-related DUI, wanted to avoid new charges and arrests;

6

- Celeste purchased the cocaine at 4735 East Prospect from a man she knew as "Clutch," which she referred to as his "club name";

- Celeste purchased the drugs in the detached garage, where she observed a scale and several people, some of whom were armed;

- Celeste showed Officer Lake text messages in which she arranged to purchase $40 worth of cocaine from "Clutch"; Officer Lake did not confirm the exact date the messages were sent, though Celeste represented that they were from May 31;

- Three years prior to the stop, Celeste regularly purchased from "Clutch" at 4735 East Prospect, but she had not done so for the past eighteen months;

- Celeste stated that during the year-and-a-half she regularly purchased from the property, Clutch would keep two large bags of cocaine in a brown dresser in a bedroom within the upstairs apartment and, when selling it, would remove the bags from the apartment and bring them to the detached garage for apportionment; she did not, however, observe this behavior or enter the house on May 31;

- Officer Lake knew 4735 East Prospect, which had previously been reported to the police as a drug house, was associated with the Infamous Ryders Motorcycle Club;

- Past police surveillance showed continuous vehicle traffic at 4735 East Prospect throughout the night, a known sign of drug activity;

- York County Drug Task Force confirmed that "Clutch" is Lenhart's "road name" and stated that they had received tips that Lenhart sold cocaine and marijuana from both the residence and garage at 4735 East Prospect;

7

- Law enforcement records—including controlled-burn reports and arrest warrants—confirm that Lenhart resides at 4735 East Prospect;

- A contemporaneous drive-by confirmed that there were at least sixteen vehicles at 4735 East Prospect after the stop; and

- Law enforcement knew from prior surveillance that the Infamous Ryders regularly met at 4735 East Prospect on Wednesdays.

(See Doc. 36-1 at 3-4; see also generally Docs 37, 44).

Lenhart advances two principal arguments regarding materiality: first that the information regarding the house is stale; and second that omitted information regarding Celeste's credibility would strip the warrant of probable cause.[3] (See Doc. 37 at 7-11; see also Doc. 44 at 6-7). We address each argument in turn.

Information that is "stale" cannot support a finding of probable cause. United States v. Zimmerman, 277 F.3d 426, 433 (3d Cir. 2002). The age of information is, however, *a single* factor we consider in determining staleness; we must also consider the "nature of the crime and the type of evidence." See id. at 434 (quotation omitted). Our court of appeals has emphasized that "the mere passage of time does not render information in an affidavit stale where: (1) the facts suggest that the activity is of a protracted and continuous nature; and (2) the items to be seized were created for the purpose of preservation." Yusuf, 461 F.3d at 391-92

---

[3] Lenhart identifies two other purported deficiencies: the date the text messages were exchanged, and the use of the phrase "road name." (See Doc. 37 at 7-11; see also Doc. 44 at 6-7). These matters are immaterial because Officer Lake knew the phrase road name from his experience, which he noted in the affidavit, and because Officer Lake's testimony and Celeste's description strongly support that the text messages were exchanged on May 31.

8

(internal citation omitted) (citing United States v. Tehfe, 722 F.2d 1114 (3d Cir. 1983); United States v. Williams, 124 F.3d 411, 421 (3d Cir. 1997)); see also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 148 (3d Cir. 2002) (holding that year-old information was not stale because relationship between defendant and suspected criminal enterprise "was of considerable duration" and warrant sought evidence—business records—typically retained for extended period); United States v. Marranca, 98 F. App'x 179, 181-83 (3d Cir. 2004) (nonprecedential) (concluding that two-year-old information regarding specific mechanistic operations of gambling ring established probable cause where affidavit set forth evidence of ongoing ring); United States v. Bagley, No. 14-CR-98, 2015 WL 5725112, at *7 (W.D. Pa. Sept. 29, 2015) (noting that years-old information regarding manufacture of counterfeit currency gave rise to "strong inference" of ongoing criminal activity), aff'd, 674 F. App'x 169 (3d Cir. 2017). The corrected affidavit here fits comfortably within those precedents because Celeste described a mechanistic, regular, and ongoing narcotics operation at 4735 East Prospect, (see 5/31/23 Lake BWC Rec. 28:14-28:35), and because the warrant sought business records, (see Doc. 36-1 at 2). The information regarding the house was not stale even though Celeste did not enter the home on May 31, 2023.

We find Lenhart's credibility-based contention similarly unpersuasive. The reliability of the informant, while relevant, comprises only *one part* of the common-sense probable cause analysis. See Gates, 462 U.S. at 230. For example, "it [is] not enough to show simply that the informant may have lied," see United States

9

v. Brown, 3 F.3d 673, 677-78 (3d Cir. 1993) (citations omitted); a magistrate judge may rely upon the statements of an informant so long as a "substantial basis for crediting" the informant's account exists, see United States v. Stearn, 597 F.3d 540, 556 (3d Cir. 2010) (quoting Gates, 462 U.S. at 245). A "detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand" can meet that standard even where there is "some doubt as to an informant's motives." See Gates, 462 U.S. at 234-35.

    As previously noted, Celeste described an ongoing drug operation based on personal knowledge, rendering the age consideration less pertinent. (See 5/31/23 Lake BWC Rec. 28:14-28:35). The affidavit further reflects that Officer Lake found cocaine residue on Celeste, who was subsequently Mirandized. (See Doc. 36-1 at 3-4). Police regularly provide consideration or promise leniency in exchange for information—none of which is improper or coercive, or would provide reason to doubt the informant's motives to a degree sufficient to undermine a finding of probable cause, particularly given the extent of police corroboration here. (See id. (describing independent police corroboration of ongoing narcotics operation at 4735 East Prospect, including frequent nighttime vehicle traffic, tips from another law enforcement division, and a large gathering at the house that day)); see also Gates, 462 U.S. at 241-42 (discussing weight independent police corroboration carries in evaluating anonymous tips and abandoning Aguilar-Spinelli test of probable cause, which required informant testimony to display both "veracity" and "basis of knowledge"); Stearn, 597 F.3d at 554-58 (emphasizing importance of police corroboration over informant credibility in post-Gates Fourth-Amendment

10

jurisprudence); United States v. Bratcher, No. 14-CR-28, 2014 WL 5089729, at *4-8 (W.D. Pa. Oct. 9, 2014) (discussing impact of police corroboration to reject that promise of leniency rendered informant testimony sufficiency unreliable to strip warrant of probable cause) (citing, *inter alia*, Stearn, 597 F.3d at 555-57; Gates, 462 U.S. at 243-45); United States v. Doumbia, No. 19-CR-392, 2022 WL 377013, at *3 n.2 (E.D. Pa. Feb. 8, 2022) (noting that affidavit supported by testimony of paid informant may provide probable cause (quoting United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007))). That Celeste was recently on parole does not alter our conclusion because her status did not change the stakes of a possession charge in a way that would provide a heightened motive to lie. We find that Lenhart's proposed or "corrected" affidavit would still support a finding of probable cause.

2. *Officer Lake Did Not Recklessly Disregard the Truth.*

Our court of appeals announced the standard for reckless disregard of the truth in Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000). An omission is reckless where an officer "omits facts that any reasonable person would know that a judge would want to know," while an assertion is reckless where there are "obvious reasons to doubt the truth of what [the affiant] is asserting." See Wilson, 212 F.3d at 783, 788. Courts must also consider "the nature and source of the information obtained" by the affiant when evaluating recklessness. See Yusuf, 461 F.3d at 384-85 (distinguishing between informant testimony and information provided by an arm of the government).

We find that Officer Lake did not recklessly disregard the truth. To the contrary, Celeste's reliable, consistent, and sweeping admissions supported the

11

strong inferences Officer Lake drew in his affidavit. We begin with the alleged omissions. The first is that Celeste last entered the house eighteen months prior to the stop. (See Doc. 37 at 7-8). As previously discussed, the "[a]ge of the information supporting a warrant application is a factor in determining probable cause," but it is not dispositive. See United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993) (citations omitted). We must consider "other variables such as the nature of the crime and the type of evidence to be seized." Bagley, 2015 WL 5725112, at *6 (citing Zimmerman, 277 F.3d at 434; Harvey, 2 F.3d at 1322).

Here, Celeste described buying from Lenhart at his home on several prior occasions over a year and a half and said that he "always" kept the drugs in the same place. (5/31/23 Lake BWC Rec. 28:26-28:35). The ongoing, mechanistic behavior of criminal narcotics operations—known both to Celeste as a former repeat customer and to Officer Lake based on his training, observation, and experience—further supports the strong inference that Lenhart was participating in an ongoing criminal enterprise on May 31. Officer Lake's interpretation, that Lenhart was selling drugs following the same procedures he did eighteen months prior, is—if culpable at all—negligent at best, but not reckless. And while Officer Lake omitted the exact date of the text-message exchanges between Celeste and Lenhart, any reasonable officer would have inferred that they were sent the day Celeste said she negotiated to buy cocaine—May 31. The last omission about Celeste's credibility is likewise not Franks material because it was reasonable for Officer Lake to believe leniency would not provide Celeste motive to lie, particularly given the detailed nature of her statements, which were corroborated

12

independently by investigators.  See United States v. Green, No. 3:22-CR-72, 2022 WL 1721208, at *8 (M.D. Pa. May 27, 2022) (considering amorphous allegations that testimony was provided for leniency, including dropped charges and reduced sentences, too speculative to establish Franks violation).

Lenhart's alleged affirmative misstatements fare no better.  Officer Lake did not make the first—that Celeste used the term "road name" to describe the moniker "Clutch"—recklessly because an officer with Officer Lake's training and experience would know that the terms "road name" and "club name" are equivalent.  The second is that Celeste stated Lenhart returned the drugs to the home after selling to her.  But that was not asserted recklessly because Officer Lake reasonably relied on Celeste's admission, which described a consistent, habitual, and ongoing narcotics trade at 4735 East Prospect.  (See 5/31/23 Lake BWC Rec. 28:14-28:35).  That Celeste last observed the particular conduct described eighteen months prior does not weaken the likely inference that the property functioned no differently at the time the warrant was executed.  We find no Franks violation.

**B.     The Good-Faith Exception to the Exclusionary Rule Applies.**

Even if we found merit in Lenhart's principal arguments, the good-faith exception to the exclusionary rule would apply.  The exclusionary rule is a judicially-crafted remedy, "appropriate only where law enforcement conduct is both 'sufficiently deliberate' that deterrence is effective and 'sufficiently culpable' that deterrence outweighs the costs of suppression." United States v. Katzin, 769 F.3d 163, 171 (3d Cir. 2014) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). The good-faith exception thus directs courts to admit evidence obtained pursuant to

a subsequently invalidated search warrant if officers acted "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." United States v. Leon, 468 U.S. 897, 918 (1984); see also Stearn, 597 F.3d at 560 (quoting Leon, 468 U.S. at 918). This exception recognizes that the balance between exclusion of probative evidence, on the one hand, and deterrence of police misconduct, on the other, favors exclusion only where the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." Davis v. United States, 564 U.S. 229, 238 (2011) (internal quotation marks omitted) (quoting Herring, 555 U.S. at 144). The test is "'whether a reasonably well[-]trained officer would have known that the search was illegal despite the [judge's] authorization.'" United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (quoting United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999)).

    The officers here easily meet that standard. There is no indication of deliberate, reckless, or grossly negligent conduct on the record before us. Any reasonably well-trained officer would have believed that the warrant—which was based on corroborated testimony describing an ongoing narcotics vender—was

supported by probable cause. We find that the good-faith exception to the exclusionary rule applies.[4]

## IV. Conclusion

We will deny Lenhart's motion to suppress evidence. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 18, 2024

---

[4] Lenhart raises two additional arguments. First, he (correctly) points out that the good-faith exception to the exclusionary rule does not apply where "the [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit," *i.e.*, where the defendant has demonstrated a Franks violation. See United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012) (quoting Stearn, 597 F.3d at 561 & n.19). Second, he urges us to suppress evidence found via execution of three subsequent warrants as "fruit of the poisonous tree." (See Doc. 37 at 12-14). Having already concluded that the search warrant for 4735 East Prospect was valid under Franks, these remaining arguments are unavailing. See Stearn, 597 F.3d at 569 (explaining that warrant predicated on legal search cannot be fruit of the poisonous tree).