IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:23-CR-268** |
| : | |
| v. : | **(Judge Neary)** |
| : | |
| **CHARLES NELSON LENHART**, : | |
| : | |
| **Defendant** : | |

## MEMORANDUM

Our legal system values finality. When a party makes certain choices, they must stick with them. One such choice is the "grave and solemn act" to plead guilty. Brady v. United States, 397 U.S. 742, 748 (1970). After a court has accepted a defendant's guilty plea to a non-binding plea agreement, he may withdraw it only if he proffers a fair and just reason to do so. FED. R. CRIM. P. 11(d)(2)(B). Defendant Charles Nelson Lenhart pleaded guilty after this court denied his suppression motion. He now contends a law enforcement officer's unrelated misconduct presents a sufficient reason to withdraw his plea. (Doc. 76). But it does not, and therefore the court will deny his motion.

I.  **Factual & Procedural Background**[1]

This case results from the search of Lenhart's home, located at 4735 East Prospect Avenue in Wrightsville, Pennsylvania. Lower Windsor Township Police Officer Sean Lake provided the affidavit of probable cause for the search warrant of

---

[1] The following factual narrative draws from the court's opinion (Doc. 50) denying Lenhart's suppression motion and a review of the footage from the officers' body-worn cameras ("BWC").

Lenhart's home. Officer Lake's affidavit was based on information he obtained during a traffic stop he executed with Officer James Miller on May 31, 2023. (See Doc. 36-1 at ECF 3-4).

That day, Officer Lake noticed a blue sedan with a North Carolina license plate in the driveway of Lenhart's home. (Doc. 36-1 at ECF 3). He ran the plate and determined it had an expired registration. (Id.). As Officer Lake was talking to the driver of the vehicle about his insurance, he smelled marijuana around the car. (See 5/31/23 Lake BWC Rec. 00:30-1:10). The driver informed Officer Lake that a backseat passenger, Celeste, had a medical card and perhaps possessed marijuana. (See id. at 16:00-16:58). The officers spoke with Celeste, who consented to a search of her backpack which revealed a dollar bill containing a small amount of cocaine powder wrapped inside it. (See id. at 17:59-18:20 (consent); id. at 20:02-20:18 (cocaine)). Officer Lake assured Celeste she would not be charged with possession if she told Officer Lake where she obtained the cocaine. (See id. at 20:32-21:12; 22:02-22:20; 29:45-29:55).

Celeste provided this information after receiving her Miranda warnings. Miranda v. Arizona, 384 U.S. 436 (1966); (See id. at 21:13-21:28). She told the officers she frequently purchased drugs at 4735 East Prospect three years prior to the stop but had been clean for the previous eighteen months. (See 5/31/23 Miller BWC Rec. 15:35-15:45; 17:00-17:40). But on May 31, Celeste texted "Clutch," Lenhart's nickname, to coordinate the purchase $40 worth of cocaine. (See 5/31/23 Lake BWC Rec. 24:35-25:15 (pseudonym); id. at 28:36-29:22 (text messages)). When Celeste bought the cocaine from Lenhart in the detached garage, she observed large

2

quantities of drugs, packing materials, and guns. (See id. at 22:21-22:40 (drugs); id. at 28:25-28:35 (drugs); see also id. at 30:09-30:35 (guns)).

Celeste claimed to "know a lot about" 4735 East Prospect. (See id. at 28:14-28:18). She advised law enforcement that Lenhart kept his stash of cocaine in a bedroom dresser within the upstairs apartment because "that's where it always is." (See id. at 28:26-28:35). Additionally, the property was "known for cocaine [be]cause they go to Baltimore, pick it up, and bring it here." (See 5/31/23 Miller BWC Rec. 16:50-16:59). To be sure, Celeste later clarified she had not gone inside the house when she purchased the cocaine on May 31 and she had last purchased drugs on the property eighteen months prior, though Officer Lake denies overhearing this caveat. (See id. at 17:00-17:40, 18:15-18:25; 5/31/23 Lake BWC Rec. 28:25-28:35; see also 10/10/24 Tr. 22:2-23:23).

The officers obtained a search warrant that same day. (Doc. 36-1). The warrant covered the home and the garage, "including all out building [*sic*] and curtilage." (See id. at ECF 2). Law enforcement executing the warrant seized, among other items, fentanyl, cocaine, firearms, ammunition, other weapons, and "club records." (See id. at ECF 5-6). The discovery of these materials allowed officers to obtain three subsequent warrants: two for the account information and transaction history for two Cash App usernames affiliated with Lenhart, "$klutchLIDI" and "$YORK9s," (Docs. 36-2, 36-3), and a third for surveillance footage from Night Hawk DVR, which was believed to contain recordings of illegal narcotics transactions implicating Lenhart. (Doc. 36-4). These materials formed the basis for the charges Lenhart is presently facing.

3

Lenhart was indicted on October 11, 2023, in a three-count indictment with possession with intent to distribute cocaine and fentanyl in violation of 21 U.S.C. § 841(a) (Count 1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2); and unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). (See Doc. 1). The government obtained a superseding indictment on July 17, 2024, containing two additional charges: retaliating against a witness, 18 U.S.C. § 1513(b)(2) (Count 4) and conspiracy to retaliate against a witness, id. § 1513(b)(2), (f) (Count 5). (See Doc. 32).

Lenhart pleaded not guilty and moved, through counsel, to suppress evidence under the Fourth Amendment pursuant to Franks v. Delaware, 438 U.S. 154 (1978), due to alleged false statements Officer Lake made in the warrant application. (Doc. 36). After holding a hearing on Lenhart's motion, at which Officers Lake and Miller testified, the court denied Lenhart's motion holding he had not demonstrated a Franks violation and, in any event, the good-faith exception to the exclusionary rule applied. (Docs. 50, 51).

On January 29, 2025, Lenhart pleaded guilty pursuant to a plea agreement. (Docs. 54, 59). The plea agreement permits him to appeal the court's denial of his suppression motion. (Doc. 54 ¶ 14). He now seeks to withdraw his guilty plea after discovering Officer Lake engaged in unrelated misconduct that led to his dismissal from the police force and facing criminal prosecution. (Doc. 76). Lenhart contends the government's failure to disclose the investigation into Officer Lake's misconduct—which began twenty days prior to his change-of-plea hearing—constitutes a Brady violation. (Id.); Brady v. Maryland, 373 U.S. 83 (1963). Lenhart

4

maintains he would not have pleaded guilty had the government informed him of this investigation. (Doc. 76). The motion is fully briefed and ripe for disposition. (Docs. 77, 80, 81).

## II.   Discussion

Before a court accepts a defendant's guilty plea to a non-binding plea agreement at a change-of-plea hearing, he may withdraw his guilty plea for any reason. FED. R. CRIM. P. 11(d)(1). But his ability to do so "wanes as the case proceeds." United States v. Agarwal, 24 F.4th 886, 890 (3d Cir. 2022). After a court accept his guilty plea, the defendant may only withdraw it if he identifies a "fair and just reason" justifying the withdrawal. FED. R. CRIM. P. 11(d)(2)(B). Certain justifications, such as "[a] shift in defense tactics, a change of mind, or the fear of punishment," are inadequate "to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).

Lenhart falls into the latter category, so he "bears a substantial burden" of making this showing. United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011) (internal quotation marks and citation omitted). Courts evaluate a motion to withdraw a guilty plea on three factors "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." United States v. Rivera, 62 F.4th 778, 788 (3d Cir. 2023) (quoting Jones, 336 F.3d at 252). The government need not demonstrate prejudice where the defendant fails to make out

the first two factors. Jones, 336 F.3d at 255 (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995)).

Lenhart does not establish a fair and just reason for withdrawing his guilty plea. He does not protest his innocence. Rather, his basis for withdrawing his plea is newly discovered evidence. Specifically, Lenhart contends the government's failure to inform him that Officer Lake was barred from a law enforcement database due to misconduct on January 9, 2025, twenty days before his change-of-plea hearing, amounts to a Brady violation. (Doc. 77 at 5). Lenhart maintains this information bears on Officer Lake's credibility, and if Lenhart had been aware of it, he would not have pleaded guilty but rather sought reconsideration of the court's denial of his suppression motion. (Id. at 6). These arguments are unavailing.

Lenhart has not met his "substantial burden" for three reasons. Siddons, 660 F.3d at 703. First, aside from disputing Officer Lake's credibility, Lenhart does not allege Officer Lake's misconduct was in any way linked to Lenhart's charges. Second, it is undisputed Officer Lake was not involved in the events undergirding Lenhart's retaliating against a witness and conspiracy to retaliate against a witness charges, and so Officer Lake's alleged misconduct bears no import to Lenhart's guilty plea as to these counts. And third, to the extent Lenhart seeks to relitigate the denial of his suppression motion, the plea agreement already permits him to appeal that ruling to the Third Circuit. (Doc. 54 ¶ 14). Because Lenhart fails to carry his burden, the government need not demonstrate the prejudice that would result from permitting Lenhart to withdraw his guilty plea. Jones, 336 F.3d at 255.

**III.   Conclusion**

Lenhart moves to withdraw his guilty plea due to unrelated law enforcement misconduct. (Doc. 76). But he fails to assert his innocence and has not met his substantial burden of proffering reasons warranting such withdrawal. Therefore, his motion will be denied. An appropriate order shall issue.

/S/ KELI M. NEARY  
Keli M. Neary  
United States District Judge  
Middle District of Pennsylvania

Dated:    August 8, 2025